IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARCHIE WATSON and CYNTHIA WATSON | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. H-03-5805 |
| ALLSTATE TEXAS LLOYDS INSURANCE COMPANY | § § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Defendant has filed a Motion for Summary Judgment (Docket Entry No. 31) and a Cross Motion for Summary Judgment (Docket Entry No. 52). Plaintiffs have filed a Motion for Partial Summary Judgment (Docket Entry No. 40). For the reasons that follow, Defendant's Motions are **GRANTED** and Plaintiffs' Motion is **DENIED**.

## I. BACKGROUND

*A. Procedural History*

Plaintiffs brought this action seeking recovery from Defendant for various damages to their home that they allege are covered under their insurance policy with Defendant. Plaintiffs make the following claims for relief: breach of contract, breach of duty of good faith and fair dealing, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act. Plaintiffs also seek a declaratory judgment to determine their rights and award them full recovery of their claims under the terms of their insurance policy. Defendant removed this case to federal court based on diversity of citizenship, and Judge Nancy Atlas denied Plaintiffs' Motion To Remand.

*B. Material Facts*

Before June of 1999, when Plaintiffs began renting out the home in question, Plaintiffs lived in the home themselves. Plaintiffs have filed several insurance claims with Defendant in the past for damages to the home. Some of those claims have been granted, some have been granted in part, and others have been denied. This case involves damages to the home that Plaintiffs allege were caused by a leaky roof and broken sewer pipes under the home.

In June of 2001, Plaintiffs reported damage to the roof of the home, which they alleged was due to Tropical Storm Allison. Plaintiffs also reported associated water damage in the interior of the home. Plaintiffs had paid a roofing company to make emergency repairs to the roof. Defendant paid Plaintiffs to get the interior walls and ceiling repaired, and reimbursed them for the emergency repairs, but denied Plaintiffs' claim for roof damage because the damage was not a covered loss.

In August or September of 2002, Plaintiffs made a claim for mold found in one of the bathrooms that they said was caused by a pipe leak behind the bathtub. Plaintiffs repaired the leak themselves, but discovered mold in the walls of the bathroom near the tub and damages to the wood floors adjacent to the pipe leak.[1] When one of Defendant's adjusters came to inspect the home regarding this claim, it was raining, and the sheetrock on the ceiling in the hall fell down. Defendant's adjuster subsequently found multiple roof leaks. Plaintiffs then made another claim for the roof leaks and the associated damages to the home. Plaintiffs made temporary repairs to the roof, which appeared to stop the leaks. Defendant has not paid Plaintiffs to repair the roof.

---

[1] Defendant subsequently paid Plaintiffs to repair this damage.

During Defendant's investigation of the claims in the fall of 2002, tests revealed that the sewer pipes under the home were broken and had been leaking. Plaintiffs filed another insurance claim, and Defendant paid for the estimated costs to excavate under the home and repair the sewer pipes. However, Defendant has refused to pay for any damages to the inside of the home that Plaintiffs allege were caused by the leaking sewer pipes.

Plaintiffs have not used any of the money Defendant has paid them to repair the sewer pipes or to repair the damage to the interior of the home. Plaintiffs allege that Defendant has not paid them a sufficient amount of money to enable them to do all of the necessary repairs, and that they do not want to do only some of the repairs, because it would leave parts of the home vulnerable to the elements, and, thus, further damage. The home has been unoccupied since 2002 and Plaintiffs contend that they shut off the water to the home immediately after they discovered the subsurface leak; therefore, Plaintiffs argue that they have not failed to mitigate any damages they have incurred.

## II. DISCUSSION

*A. Legal Standard*

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

    *B. Plaintiffs' Claims*

    Both parties make numerous arguments that they believe warrant granting their motions for summary judgment.  However, it is unnecessary for the Court to reach many of these arguments because it is clear from the evidence that Plaintiffs cannot recover for the damages to their home under the theories they have presented.  First, Plaintiffs cannot recover for damages to their roof—or any interior damage that may have been caused by roof leaks—because the undisputed evidence shows that Plaintiffs were aware that their roof was leaking at two different times and failed to timely inform Defendant, as required by their policy.  Secondly, Plaintiffs cannot recover for any damage that may have been caused by the below slab leaks because Defendant's expert decisively concluded that the damages to the interior of the home could not have been caused by the below slab leaks.  As Plaintiffs have produced no evidence to contest Defendant's expert's conclusions, there is no issue of material fact on this point.  Therefore, summary judgment for Defendant is warranted.

    Under Texas law, Plaintiffs bear the burden of proving that the damages to their home are covered under the terms of their insurance policy with Defendant. *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004) (citations omitted).  If Defendant is able to establish that coverage for certain damages is excluded under the policy, Plaintiffs have the burden of proving that an exception to the exclusion applies.  *Id*. (citations omitted).

1. Roof Leaks

Defendant argues that Plaintiffs may not recover for any damages to their home caused by roof leaks because Plaintiffs failed to timely report the roof leaks to Defendant. Plaintiffs first made a claim regarding roof and associated water damage in June of 2001. Plaintiffs cannot argue here that this claim was wrongfully denied because, pursuant to Plaintiffs' policy, any action brought against Defendant must be brought within two years and one day after the cause of action accrues.[2] However, one of the reasons Defendant denied Plaintiffs' 2002 roof damage claim was because Plaintiffs did not adequately repair the roof in 2001. Therefore, Plaintiffs' conduct leading up to the 2001 claim is relevant to this case. As evidence of Plaintiffs' conduct in this regard, Defendant has presented the undisputed deposition testimony of Antwanette Weaver, a former tenant of Plaintiffs who lived in the home in question. Ms. Weaver lived in the home from July of 1999 to June of 2000. She stated that the dining room ceiling tiles leaked when it rained "really bad," and that it did so throughout the time she lived there. Weaver Dep. at 8. Ms. Weaver further stated that she told Plaintiffs that the dining room ceiling leaked and showed him where, but that Plaintiffs did nothing about the leak in the dining room. *Id.* at 8-9, 11. In fact, Ms. Weaver said she moved out of the home because of the leak, as well as other problems with the home. *Id*. at 9-10.

Plaintiffs contend that Mr. Watson's affidavit, which was submitted as evidence, contradicts Ms. Weaver's testimony. However, Mr. Watson's affidavit simply recounts the history of his claims, and does not state when he first became aware that his roof leaked.

---

[2] Plaintiffs' wind/hail claim was denied on October 9, 2001 and Plaintiffs brought this case on December 23, 2003.

According to Plaintiffs' policy, Plaintiffs had the following duties after loss:

**Your Duties After Loss**: In case of a loss to covered property caused by

**A Peril Insured Against**, you must:

(1) give prompt notice to us or to our agent

In Texas, such a notice provision is a condition precedent to recovery under the policy. *Am. Teachers Life Ins. Co. v. Brugette*, 728 S.W.2d 763, 764 (Tex. 1987) (citation omitted). Taking Ms. Weaver's statements as true, because there is no evidence in the record to contradict them, Plaintiffs waited at least a year to inform Defendant of any roof leaks. This amount of time is not prompt as a matter of law, especially considering the fact that Plaintiffs have provided no explanation or excuse for their failure to inform Defendant of the leaks in a more timely fashion. *See, e.g. Nat'l Union Fire Ins. Co. v. Bourn*, 441 S.W.2d 592, 595 (Tex. Civ. App. 1969, writ Ref. N.R.E.), *Klein v. Century Lloyds*, 275 S.W.2d 95, 97 (Tex. 1955).

Plaintiffs also filed a claim for roof damage in 2002, after Defendant's claim adjuster witnessed a portion of the hall ceiling collapse. However, during Defendant's investigation of the claim, Plaintiffs admitted to Defendant that a prior tenant had informed them that the roof had begun leaking again after Plaintiffs repaired it in the summer of 2001.[3] Plaintiffs estimated that their prior tenants told them this in the fall of 2001. Considering that Plaintiff did not make a claim for subsequent damage to the roof until after one of Defendant's adjusters observed part of the ceiling fall, it is impossible to know when or if Plaintiffs would have reported a roof leak to Defendant. By failing to

---

[3] This is reflected in some of the documents submitted as summary judgment evidence. Plaintiffs do not contest that these statements were made.

6

timely report the subsequent roof problems, Plaintiffs failed to comply with the policy provision listed above.

Plaintiffs seem to argue that Defendant must pay for the damage caused by the roof leaks because one of Defendant's adjusters represented to Plaintiffs that the damages were a covered loss. Plaintiffs present an audio tape of a conversation between an adjuster and Mr. Watson when the adjuster went to the home in question to inspect the damages.[4] The adjuster seems to say that some of the damages are covered losses. However, this representation does not prevent Defendant from denying coverage once it discovered that Plaintiffs had not timely informed them of the damage. *The Minnesota Mut. Life Ins. Co. v. Morse*, 487 S.W.2d 317, 320 (Tex. 1972) (citation omitted) (saying that "waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended").

Therefore, because Plaintiffs failed to timely report roof leaks on two different occasions, they are prevented from recovering for any damage the roof leaks may have caused to the home.

2. Below Slab Leaks

Plaintiffs also seek to recover for damages to their home that they believe are a result of below slab leaks. However, Defendant's causation expert, Haag Engineering, stated conclusively in its report that "[c]urrent below-slab sanitary leaks can be excluded as a source of moisture causing damage to the subject wood floor." Haag Engineering Rpt. at 7. Plaintiffs attempted to undermine this opinion when Paul Reed Williams, the

---

[4] In its Reply, Defendant moved to strike many exhibits submitted along with Plaintiffs' response arguing that they were improper summary judgment evidence. One of the exhibits objected to was the audio recording. Defendant's objections to the exhibits are **DENIED**.

person who inspected the home for Haag, was deposed for this case. However, Plaintiffs were unable to do so. *See* Williams Dep. at 34-35, 38-39. Given that Plaintiffs have presented no expert of their own or other independent evidence to contradict Mr. Williams's opinion, there is no issue of material fact as to whether Defendant was entitled to refuse coverage.

It is true that Hometest, the company that Defendant hired to do a preliminary test of the damages to Plaintiffs' home in late 2004, stated in its report that a plumbing leak through the slab affected certain rooms in the house. However, the person who wrote the report, Ernest Michael Pankonien, stated in his deposition that he was not an expert in determining the cause of internal damage to a home.[5] Rather, the intent of the report was to recommend to Defendant that they hire an expert to determine the cause of the damage:

> A: "Refer you to living room, you will see that what was written is that, 'The sources of water intrusion in living room appears to be,' and then we list active roof leak, condensation due to temperature differential and plumbing leak under the slab.
>     So it was what was visually observed and recommendations would be to have an expert such as this leak detection firm, or whoever Allstate—or the Watsons wanted to utilize that—that would have the actual expertise to definitively answer that question."
>
> Q: "And—and likewise on each of the rooms—and you just referred to that Page 2 and then the subsequent page, Page 3. The report states it appears that the cause may be such and such, a roof leak, a plumbing leak, some other leak; more investigation is needed, go do it; is that correct?"
>
> A: "Yes, sir."

Pankonien Dep. at 44. Later, Mr. Pankonien stated that:

> A: "It would be better stated for the record that based on the—the limited visual inspection and the sampling that was conducted, individuals and/or

---

[5] Mr. Pankonien never went to the home himself. He relied on the data and facts that were gathered by a Hometest inspector to compile his report. Pankonien Dep. at 14-15.

8

> qualified firms with more experience and qualifications in structural and leak and cause origin determination analysis should be retained in order to more fully delineate what caused the mold and what needs to be done to correct the sources of moisture intrusion.

*Id.* at 47.

Defendant also hired A Leak Detection to determine whether any water leaks existed in the under slab sewer system. The report confirmed that such leaks existed, but did not say that such leaks caused damage to the floors in Plaintiffs' home.

Therefore, Defendant did not breach its contract with Plaintiffs when it refused to pay for damages that Plaintiffs allege were caused by roof damage and below slab leaks.

### 3. Other Claims

Because, as a matter of law, Plaintiffs cannot prevail on their breach of contract claim, Defendant is also entitled to summary judgment on the rest of Plaintiffs' claims. "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). The Texas Supreme Court left open the possibility that an insurer could commit an act that was so extreme that it would cause injury independent of the policy claim. *Id.* (citation omitted). There is no evidence of extreme conduct on the part of Defendant in this case.

Recovery under Plaintiffs' Texas Insurance Code and Texas Deceptive Trade Practices Act claims are dependent on a finding of bad faith. *Koral Indus., Inc. v. Security-Connecticut Life Ins. Co.*, 788 S.W.2d 136, 147-48 (Tex. App. – Dallas 1990, writ denied with per curiam opinion 802 S.W.2d 650 (Tex. 1990)). As there can be no claim for bad faith here, Plaintiffs' statutory claims necessarily fail. Plaintiffs' statutory

claims are also dependent on the existence of a valid claim under an insurance policy. *Id.*, *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex. 1988).

### III. CONCLUSION

For the foregoing reasons, Defendant's Motions for Summary Judgment are **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment is **DENIED**. Plaintiffs' claims are therefore **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

SIGNED this 5th day of July, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS NOTICE SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**